IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KEVIN WAYNE PROVENCIO                                                                PLAINTIFF

           v.                    Civil No. 07-5035

SHERIFF KEITH FERGUSON;
and CAPTAIN HUNTER PETRAY                                                           DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Kevin Wayne Provencio brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. While he was an inmate of the Benton County Detention Center, Provencio contends his constitutional rights were violated when he was housed in pod with sex offenders and attacked by a fellow inmate.

Defendants filed a motion for summary judgment (Doc. 18). To assist plaintiff in responding to the summary judgment motion, I entered an order (Doc. 22), directing Provencio to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. Provencio filed a timely response to the court's questionnaire (Doc. 23). The case is currently before the undersigned for the issuance of a report and recommendation on the summary judgment motion.

## I. BACKGROUND

On March 18, 2004, Provencio plead guilty to two counts of sexual assault in the second degree. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1; *Plaintiff's Response* (Doc. 23)(hereinafter

-1-

*Resp.*) at ¶ 1.[1]  He was sentenced to a period of confinement of sixty days followed by probation for ten years with six months intensive supervision. *Resp.* at ¶ 2.  He was determined to be a sex offender and ordered to complete a sex offender registration form. *Id.* at ¶ 3.  According to the judgment, Provencio committed a target offense and was not eligible to have his records sealed. *Id.* at ¶ 4.

On August 25, 2006, Provencio was booked into the Benton County Detention Center (BCDC) on a theft of property charge. *Resp.* at ¶ 5.  He was released on August 26th after securing a bond. *Id.* at ¶ 7.

On September 27th, an affidavit of probable cause was filed by Detective Andy Lee of the Bentonville Police Department seeking a warrant for Provencio's arrest for delivery of a controlled substance, manufacturing of a controlled substance with intent to deliver, and possession of drug paraphernalia. *Resp.* at ¶ 8.  A warrant for his arrest was issued on September 27th. *Id.* at ¶ 9.

He was booked into the BCDC on October 24, 2006, on charges of delivery of a controlled substance, manufacturing a controlled substance, possession with intent to deliver and use, and possession of drug paraphernalia. *Resp.* at ¶ 10.  On October 25th Detective Andy Lee submitted an affidavit of probable cause in which he noted Provencio was a registered sex offender. *Defts' Ex.* 2 at pages 23-24; *Resp.* at ¶ 12 (without knowledge to agree or disagree).

On October 26th Probation Officer Emily McCandless submitted an affidavit for revocation of probation.  She noted that Provencio had been placed on ten years of state

---

[1] Provencio states the date was 2002. However, the judgment submitted as *Defendants' Exhibit* 1 clearly reflects a date of March 18, 2004, in several places on it and it was filed of record on April 2, 2004.

supervised probation on March 18, 2004, for the crime of sexual assault in the second degree. *Defts' Ex.* 1 at pages 6-7; *Resp.* at ¶ 13 (without knowledge to agree or disagree). On October 26th a white warrant was issued for Provencio based on the fact that there was reasonable grounds for believing he had violated the terms of his probation. *Resp.* at ¶ 14.

On October 27th Provencio submitted a request to be placed on the public defender's list. *Resp.* at ¶ 15. In response, he was added to the list the following day. *Id.* On October 27th he also asked to visit the law library. *Defts' Ex.* 4 at page 2. In response, he was added to the list the following day. *Id.*

On October 27th Provencio submitted a request stating he had been placed in protective custody (PC) because there was no room in 149 [the sex offender pod]. *Defts' Ex.* 4 at page 3. He asked to be put in D pod. *Id.* He said he could not be locked down 23 hours a day. *Id.* He said it was getting to him. *Id.*

Provencio states he was never asked to be put in protective custody and was put in there automatically just because he was a sex offender. *Resp.* at ¶ 17, ¶ 18, & ¶ 24. He states they just assumed he needed protective custody. *Id.* at ¶ 24.

On October 27th Provencio asked to find out about his charges, the warrant for the search of his property, and the items that were taken from his house. *Resp.* at ¶ 20. In response, he was told to contact Investigator Lee at the Bentonville Police. *Id.* at ¶ 21.

On October 31st Provencio requested law library access. *Resp.* at ¶ 22. He was given access on November 6th. *Id.*

On November 3rd Provencio submitted a request stating that every since he had been there he had been waiting to go to a normal cell. *Resp.* at ¶ 23. He complained that he did not

need to be on lock down 23 hours a day. *Id.* In response he was told he was not on lock-down but on PC. *Defts' Ex.* 4 at page 6. He was told he would remain there until he could be moved into D-149 the sex offender pod. *Id.*

Provencio was asked when he was moved to D-149. *Resp.* at ¶ 32. He responded he was not sure when. *Id.*

Provencio requested medical care on November 6th and was seen by the nurse. *Defts' Ex.* 3 at page 3. On December 15th, Deputy Clark was assigned to D-pod. *Defts' Ex.* 5 at page 2; *Resp.* at ¶ 33 (without knowledge to agree or disagree). He was helping Corporal Echols pass out toilet paper and feed breakfast. *Id.*

Echols instructed all inmates, including Provencio, to get up, get dressed, make their bunks, and come out to the day-room. *Defts' Ex.* 5 at page 2; *Resp.* at ¶ 34 (without knowledge to agree or disagree). Echols advised all inmates they had ten minutes to get everything done or they would be locked down. *Defts' Ex.* 5 at page 2; *Resp.* at ¶ 35 (without knowledge to agree or disagree). At 0515 or 5:15 a.m. Clark advised all inmates that they had plenty of time to get everything done and they needed to get in the day-room. *Defts' Ex.* 5 at page 2; *Resp.* at ¶ 36.

At 0531 or 5:31 a.m., Clark noticed several doors had not been shut. *Resp.* at ¶ 37. Echols called over the intercom and informed all inmates that Clark was getting ready to come in there and lock-down all inmates that had doors open. *Id.* at ¶ 38.

At 0531 or 5:31 a.m, Clark walked into D-149 and informed all inmates with open doors, including Provencio, that they were being locked down for disobeying the order of a deputy.

AO72A
(Rev. 8/82)

*Resp.* at ¶ 39. Provencio agrees he was told this but states at the time of this incident he was living in the cell used as the "public restroom" and the doors were supposed to stay open. *Id.* He indicates that just because he is a sex offender the officers do what they want. *Id.*

Clark completed cell inspections of all cells and pulled all the mats and returned to his duties. *Resp.* at ¶ 40. Provencio was charged with a disciplinary violation of disobeying the order of a deputy. *Id.* at ¶ 41. He was given ten days lock down and loss of privileges. *Id.* at ¶ 42. He appealed and the decision was modified. *Defts' Ex.* 5 at page 1.

On December 22nd Provencio submitted a request to be taken off turkey products because of his religious beliefs. *Resp.* at ¶ 44. His request was denied. *Id.* On December 27th Provencio requested and was given a copy of his probable cause affidavit. *Id.* at ¶ 45.

On January 5, 2007, Provencio was put on a diabetic diet and a night-time snack was authorized. *Resp.* at ¶ 26. On January 5th, Provencio was seen by Dr. John Huskins. *Resp.* at ¶ 27. He noted Provencio had trouble with insomnia. *Id.* Dr. Huskins noted a history of hypoglycemia and decided they should monitor Provencio's sugars. *Id.* On January 7th, Provencio's diabetic diet was stopped but his night-time snack was still authorized. *Id.* at ¶ 28.

On January 19th, Provencio submitted a grievance complaining of an allergic reaction to the soap and shampoo handed out. *Resp.* at ¶ 46. He stated he talked to the nurse and she said there was nothing she could do. *Id.* He asked if his family could bring him some soap. *Id.* In response, Petray said he did not make medical decisions. *Id.*

On February 1st Provencio submitted a grievance asking why he was in the sex offender pod when he was not in the jail on a sex crime. *Resp.* at ¶ 47. He said it was discrimination. *Id.* In response, he was told he would remain on his current housing status. *Id.*

On February 2nd Provencio submitted another request wanting to know why he was housed in the sex offender pod. *Resp.* at ¶ 49. In response, he was told he would remain where he was. *Id.*

Provencio submitted a second grievance on February 2nd. *Resp.* at ¶ 50. He asked Lt. Carter why he was housed in the sex offender pod when he was not charged with a sex crime. *Id.* He also said he was housed with inmates who had already been sentenced. *Id.* In response, he was told his question had already been answered. *Id.*

Provencio was asked whether all the other inmates in the pod he was assigned to had been sentenced. *Resp.* at ¶ 51. He responded no. *Id.* He indicates everyone in the pod was a sex offender. *Id.* Some on the inmates assigned to the pod were awaiting trial on pending criminal charges and others had already been sentenced. *Id.* Provencio indicates the BCDC did have one pod that held only people who were sentenced. *Id.*

On February 6th Provencio submitted another grievance complaining about being housed in the sex offender pod and stating he was going to contact an attorney. *Resp.* at ¶ 52. In response he was told to contact whoever he liked that his housing status would not be changed. *Id.*

On either February 1st or the 7th, Provencio submitted a grievance stating he had been threatened with bodily harm. *Resp.* at ¶ 53. He indicates he got into a fight with an inmate who had already been sentenced. *Id.* Provencio indicates this same inmate got into another fight at around the same time. *Id.* Provencio states after he submitted the grievance he got into another fight with the same inmate. *Id.*

AO72A
(Rev. 8/82)

On February 12th, Provencio appeared in the Benton County Circuit Court on the petition to revoke his probation of the sexual assault charges. *Resp.* at ¶ 54. On March 12th, Provencio submitted a grievance complaining that he did not receive recreation over the weekend. *Resp.* at ¶ 55. He asked if it was because they were sexual offenders. *Id.* He also asked why they always got the book cart last. *Id.* In response, Petray stated all inmates are treated equally. *Id.*

There is no record of an altercation between Provencio and another inmate on February 27th. *Resp.* at ¶ 70 (without knowledge to agree or disagree). Provencio did not request medical treatment on February 27th or any day near that day for injuries received in an altercation with another inmate. *Resp.* at ¶ 71 (without knowledge to agree or disagree). In responding to interrogatories, Provencio admitted he did not receive any injuries as a result of the actions of defendants. *Defts' Ex.* 7 (response to interrogatory number 7); *Resp.* at ¶ 72(A)(without knowledge to agree or disagree). Provencio indicates he was attacked by a fellow inmate but only the other inmate was injured. *Defts' Ex.* 7; *Resp.* at ¶ 72(B).

On March 15th, Provencio submitted a grievance. *Resp.* at ¶ 56. He asked if all inmates were treated equally why not a single inmate in the sex offender pod was a trustee. *Id.* Petray responded that trustee status was a privilege not a right. *Id.* He said: "We make the trustees that we want." *Id.*

On March 23rd, Provencio was seen by Dr. Huskins for a rash on his face and given Cortisone Cream. *Resp.* at ¶ 29. Provencio was locked down on March 24th when Deputy Monroe noticed him "flip off" the door of D-149. *Id.* at ¶ 57. Provencio was charged with a disciplinary violation for making an obscene gesture and given ten days lock-down and loss of privileges. *Id.* at ¶ 58.

AO72A
(Rev. 8/82)

On March 25th Provencio was locked down for fighting. *Resp.* at ¶ 59. He was given thirty days lock-down and loss of privileges. *Id.*

Provencio went to the Benton County Circuit Court on March 26th on the revocation charges and the case was reset to April 30th. *Resp.* at ¶ 60. On March 30th Deputy Aberle found Provencio and Inmate Thompson sleeping in the bunks in the public restroom and they were locked down. *Id.* at ¶ 61.

On April 27th, Provencio was seen by Dr. Huskins and he examined Provencio's toe where a toenail had pulled off. *Id.* at ¶ 30. He noted Provencio had no infection. *Id.*

On April 30th Provencio was sentenced to 18 years in the ADC on the revocation charges. *Resp.* at ¶ 62. He was also sentenced to 12 years on the drug charges. *Id.* at ¶ 63. Provencio was transferred to the ADC on July 5th. *Id.* at ¶ 65.

The BCDC policy regarding classification states that "sex related offenders . . . may be separated immediately to protect the health and safety of all inmates." *Resp.* at ¶ 67. Provencio was classified as a sex related offender based on his previous sex related convictions. *Id.* at ¶ 68.

Provencio believes segregating sexual offenders from other inmates is a type of discrimination based on a stereotype. *Resp.* at ¶ 48. He was asked to explain how the conditions of confinement in the sex offender pod he was housed in differed from other pods at the BCDC. *Id.* He responded: the guards treated the inmates "like shit;" they would sometimes shut the water off; they would call yard call before day light and in the cold knowing it was too cold for any of them to go outside; they made things unfair; and he heard some of the staff "call us baby rapers and other names." In other responses and/or grievances, Provencio complained about the

AO72A
(Rev. 8/82)

following: receiving the book cart last; inmates not being made trustees; and being housed with inmates who were already sentenced.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendants have now moved for summary judgment. First, defendants contend Provencio has no constitutional right to a particular housing classification or status and his rights were not violated when he was placed with other sex offenders. Second, they maintain Provencio failed to exhaust his administrative remedies with respect to the alleged attack by a

AO72A
(Rev. 8/82)

fellow inmate on February 27, 2007, prior to filing this lawsuit. Accordingly, defendants maintain this claim is subject to dismissal. Third, they maintain Provencio's claim for compensatory damages are barred by the Prison Litigation Reform Act as he has provided no proof of actual physical injury. Alternatively, defendants maintain they are entitled to qualified immunity.

### *Discrimination/Housing Assignment*

In this case, Provincio contends both his initial assignment to protective custody and then his assignment to D-149 the sex offender pod were based solely on his prior conviction of sex related offenses. He maintains the housing assignment violates his federal constitutional rights.

"We begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged." *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999). *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Pretrial detainees are presumed innocent and may not be punished."). Under *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), "restrictions on pretrial detainees that implicate a liberty interest protected under the Due Process Clause may not 'amount to punishment of the detainee.'" *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001). "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537. In determining whether a particular restriction constitutes a permissible

restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539. "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative." Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests. The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046.

In this case, it is undisputed that Provencio was classified as a sex related offender based on his previous sex related convictions. It is also undisputed that the BCDC policy regarding classification of inmates provides that sex related offenders may be separated immediately to

-11-

protect the health and safety of all inmates. It is this policy that was applied to Provincio and resulted in him being held in protective custody until there was space for him in the sex offender pod. He then remained in the sex offender pod. There were clearly legitimate non-punitive reasons for placing sex offenders in a separate housing unit from other inmates. *See e.g., Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992)(detention center has a legitimate interest in segregating individual inmates from general population for non-punitive reasons, such as where there is a threat to the safety and security of the institution). Provencio has presented no evidence of punitive intent on the part of the defendants. Detention center officials have discretion in classifying prisoners and determining where they should be housed within the facility. *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983). The decision to place him in the sex offender pod was not a disciplinary matter, or punishment for the crimes he was being charged with, rather it was an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.

Similarly, we find no violation of the Equal Protection Clause by the separate housing of sex offenders. The BCDC's decision to distinguish sex offenders as a group is rationally related to the legitimate governmental purpose of protecting the health and safety of all inmates and thus does not violated the Equal Protection Clause. *Cf. Mahfouz v. Lockhart*, 826 F.2d 791 (8th Cir. 1987)(Arkansas' work release statutes and regulations that prevent sex offenders from participating in work release programs do not violate Equal Protection).

### *Failure to Exhaust Administrative Remedies*

As amended by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a)

provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court in *Booth v. Churner*, 532 U.S. 731, 738-39, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001).

There is no record of Provincio filing any grievances or medical requests about his being attacked by a fellow inmate on February 27, 2007. When asked about the lack of records in the summary judgment questionnaire, he responded merely responded that he was without knowledge to agree or disagree. *Resp.* at ¶ 70 & ¶ 71. Provincio's claim based on the February 27th attack by a fellow inmate cannot proceed because Provincio did not exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, ___, 127 S. Ct. 910, 918-23, 166 L. Ed. 2d 798 (2007)(unexhausted claims cannot be brought in court or considered; failure to exhaust is affirmative defense).

## IV. CONCLUSION

I therefore recommend that the motion for summary judgment (Doc. 18) be granted and this case dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of August 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)